Coykendall agt. Eaton.

## SUPREME COURT.

PETER COYKENDALL, appellant agt. NATHAN P. EATON, respondent.

The duties of an *innkeeper*, as such, are due only to his guests.

To constitute one a guest, it is not necessary that he be at the inn *in person*. It is enough that his *property* be there in the charge of his wife, or servant, or agent who is there in his employment or as a member of his family:

But they must be there in such way that the law implies the property, while there, to be in *his possession*, and not in the possession of the person who is there with it as his bailee.

Where the owner of the property hires it out or lends the use of it, to the person who takes it to the inn; in either case, the rule is, that the owner can claim only the ordinary rights of owner, as against a subsequent bailee, and not the special rights which belong to a guest, unless such special rights are expressly transferred to him by his bailee.

A *bailee* for hire or a gratuitous bailee, who delivers the goods he has as such bailee, to a wrong party, or who, after they are demanded of him does not in any way ac count for their loss, is liable to the true owner for their value.

And if the defendant is liable for *gross negligence* as such bailee, the action for not delivering the property on a proper demand being made, can be maintained either by the bailee from whom the defendant received it, or by the real owner.

Where there is some evidence given, going to prove that the person in the employ of the innkeeper, who received the property into his possession for the innkeeper, had authority from the innkeeper so to do, it is error to nonsuit the plaintiff, in an action against the innkeeper as bailee. Such evidence should be submitted to the jury.

*Fifth District, General Term, April,* 1869.

*Present,* BACON, MULLIN, FOSTER *and* MORGAN, *Justices.*

APPEAL from an order of the Onondaga county court, denying a new trial. The material facts are stated in the opinion.

T. K. FULLER, *for appellant.*

I. The county court erred in not allowing the plaintiff to amend his complaint, *without costs,* where the request to amend was for the purpose of conforming the pleading, to

the proof in the case, as allowed by the court.   The judge
erred for the following reasons :

1. Because the variance between the pleading and the
proof was not material, (*Code, sec.* 170), and *not being mate-
rial* the court should have directed the *fact* to be found ac-
cording to the evidence, or should have ordered an immedi-
ate amendment, *without costs.* (*id.*)

2. The variance was *not material,* because it did not act-
ually mislead the defendant, to his prejudice, in maintaining
his defense upon the *merits.*

The defendant did not *allege* that he had been so misled
by the variance, neither did he prove, or offer to prove, to
satisfy the court, either that he had been misled, or *in what*
*respect* he had been misled.   (*Code, sec.* 169.)

Failing to allege and prove *this,* the Code pronounces the
variance *not material* ;  and not being material, it should
have been disregarded, and the case given to the jury on
the evidence, or the court should have ordered an immediate
amendment, *without costs,* (*Code, secs.* 169, 170, *read to-
gether.*)

3. The request to conform, etc., should have been
granted.

*a.* For the reasons above mentioned.

*b,* Because, neither the *claim* nor the *defense,* would have
been substantially changed thereby, and the *facts proved,*
which alone fix the *merits* of the case, would remain the
same.

4. The court has no *discretion* in cases of this kind, to
impose costs, and especially the costs of an hitherto unsuc-
cessful defense.

*Discretion* is confined to those cases where the variance
is *material* ; and the Code (*sec.* 169,) teaches us how a *va-
riance* becomes *material.*   Other variances are to be disre-
garded, or cured by an amendment without costs.

If there *were* discretion, would it not be a monstrous ex-
ercise of it, to require the plaintiff to pay *four times* the

amount of his claim, in costs, to a defendant unsuccessful on *two* trials, before he could be permitted to go to the jury on the facts proved in the case? (*Variance deemed immaterial when—Catlin* agt. *Gunter*, 1 *Ker.*, 368. *Discretion limited—Amendments to conform,* etc., *a matter of course. Beardsley* agt. *Stover*, 7 *How.*, 295, HARRIS J. *Case not criticised*).

" Though there has been but one trial, yet, as that trial has been set aside, and a new trial ordered, the court has the same power to allow the parties to amend their pleadings, as though the action had never been tried. (HARRIS, J., 11 *How.*, 170).

" On a *third* trial of this case, the judge allowed the plaintiffs to amend their complaint, *without costs*, or on any terms, so as to conform it to the facts proved." (*Dauchy, et al.*, agt. *Tyler*, 15 *How.*, 399).

A defendant who thinks of succeeding in an action upon errors in the complaint, without regard to the *merits* of his defense, may as well stay out of court as to come in, under the Code." (*Wood* agt. *Wood*, 26 *Barb.*, 359, *and cases cited. See also* 24 *Barb.*, 287).

*Discretion* even, reviewable when abused, (18 *How.*, 509. *See Van Ness* agt. *Bush*, 22 *How.*, 491. *Case not criticised. Also*, 36 *Barb.*, 27. *Also id.*, 377).

5. The defendant's own testimony, given after the court had refused to dismiss the complaint, at the close of plaintiff's case, shows that the court should have granted the motion to conform the complaint to the facts proved, and that, too, *without costs*.

Denying us this right *to conform, etc.*, to which we are entitled under the Code, the judge of the court below, virtually refused us to go to the jury on the facts and merits of the case, because we were unwilling to pay in costs to the defendant four times the amount of our claim.

This is manifestly wrong, supporting a technical defense as against a meritorious claim.

II. The court erred in excluding the evidence offered, and the exception there noted, was well taken.

III. It is submitted that the court erred in excluding the evidence offered, and that the exception of plaintiff's counsel was well taken.

IV. The court erred in dismissing the plaintiff's case under the circumstances, for the most apparent reasons.

1. Because the court decided, as a question of law, the fact, *whether or not Case was authorized by defendant to receive plaintiff's robe and cushion the second time.*

This was a question of fact for the jury. The proof shows that Case was so authorized.

The defendant Eaton, swears to a sort of *limitation* to Case's authority, on that evening; but in the absence of proof that plaintiff or his agent *knew* of this limitation, it cannot operate to discharge the defendant from his liability in the premises.

The publc had a right to *assume*, in the absence of special notice, that Case had all the authority he appeared to be exercising.

This *limitation* is substantially upset, however, by the defendant's own evidence, on his cross-examination.

The *fact*, therefore, as to the extent of Case's authority, should have gone to the jury.

2. Because the court decided, as a question of law, that the defendant was not liable as a bailee for hire, under the proof allowed in the case.

I submit that, since the plaintiff paid 25 cents for the keeping of his robe the first time, it was a question of fact under the proof in the case, whether there was not an implied agreement to pay for the keeping the second time; and therefore the defendant, after a demand and refusal to deliver, became liable as a bailee for hire, unless he should *account for the loss of the property without his fault,* which loss the defendant has uniformly neglected and failed to show,

or attempt to show. (11 *Wend.*, 25 ; 1 *Daly*, 347, *and cases cited.*)

I ask the court to consider *why* the defendant has never, except in the justice's court, placed his man Case,—the only man who had anything to do with the robes and other property in the ward room, that night, on the stand to account for the loss of the property in question ?

A demand, and refusal to deliver, were clearly shown on each trial, and the *onus* was with the defendant to account for such loss. (*id.*)

Because the court withheld from the jury the fact, whether Case, the authorized agent of defendant and acting as such, did not, under the proof, deliver said robe and cushion to the wrong party, thereby being guilty of *gross negligence*, rendering his principal liable as a bailee without hire.

There is proof bearing on this point, which is not contradicted.

This proof is sufficient to justify the inference that defendant had been told by Case, that he, (Case) delivered the robe and cushion to Charles Coykendall the second time he left, as Case swore on the trial before the justice.

If Case delivered the robe to any one, it must have been to the wrong party : if to the wrong party, it was an act of gross negligence.

We had a right to go to the jury on this fact, of which the court wrongfully deprived us.

"When a man doth find goods," says Lord COKE, "it hath been said, and so commonly held, that if he doth dispossess himself of them, by this he shall be discharged; but this is not so, for he which finds goods is bound to answer him for them, who hath the property ; and if he deliver them over to any one, unless it be to the right owner, he shall be charged for them." (2d *Parsons on contract*, 3 ed., *p.* 96, *note.*

Coykendall agt. Eaton.

If the above be true of a finder, for still greater reasons is a party liable, who receives goods from another, and afterwards delivers them to the wrong person. (*Story on Bailment*, §414; *Esmay* agt. *Fanning*, 5 *How.*, 228; *Packard* agt. *Getman*, 4 *Wend.*, 613; 4 *Bing.*, 476.)

WILLARD, J., says, in 5 *How.*, 232, if trover will lie against a common carrier, or a warehouseman, for a misdelivery, it can, under the like circumstances, be sustained against a bailee for hire, or a gratuitous bailee. It results from the very obligation of his contract, that if he fails to restore the article to the rightful owner. but delivers it to another person not entitled to receive it, he is guilty of a conversion."

V. It is further submitted that the defendant, under the proof in this case, had a lien, as innkeeper, on the robe and cushion in question, for the accommodation of Charles Coykendall and his lady, after their return from the tipover.

If the defendant had that lien, was he not an insurer of said goods, and absolutely liable for their loss while in his custody, without plaintiff's fault, or that of his agent?

VI. It is confidently submitted, that a cause of action was established by the proof in this case.

It should have gone to the jury on the entire evidence in the case, and the court should have instructed the jury to disregard the variance between the complaint and the proof, and decide the case on the evidence, because the variance was immaterial, (*Code*, 169, 170,) or the court should have ordered an immediate amendment, without costs, and then sent the case to the jury on the *facts*.

Neither of which were done; but the questions of fact were decided by the court erroneously, and therefore, the pleading should be amended by this court, and a new trial be ordered, with costs to abide the event.

R. H. GARDNER, *for respondent.*

I. "The complaint on which the cause has been tried in both the justices' and county court, reads as follows: " The

plaintiff complains of the defendant for one wolf robe and cushion left in the possession and care of the defendant, which he neglects and refuses to deliver, and claims damages in the sum of $40."

Under this complaint the cause has been tried in the county court and a verdict given for the plaintiff. On appeal to the supreme court, a new trial was granted on the ground that the plaintiff was not entitled to recover, with directions that the costs should bide the event.

Before opening the cause to the jury, the plaintiff's counsel asked to be permitted to amend the complaint by adding an allegation as follows; viz: " That defendant was an innkeeper and that plaintiff was his guest at the time of the loss of the property in question." This was objected to by the defendant's counsel on the ground that it changed the liability of the defendant, and was in fact an entire new cause of action. It is now insisted that the offer to amend, so changed the form of action, as to impose an entirely new responsibility on the defendant and called on him for an entirely new line of defense to exonerate himself from liability for the loss or damage to the goods. (*Grinnell* agt. *Cook*, 3 *Hill.*, 485.)

It is further insisted that if the county court was right in allowing the amendment, it was *properly* upon the conditions imposed and which the plaintiff's counsel refused to accept.

The county court was right in directing the plaintiff if he amended his complaint, to pay the costs of the former trial and the costs of the appeal to the general term. Otherwise, the defendant would have been subjected to the peril of losing the costs to which he was already entitled, and the further peril of paying the costs of an action which he had already successfully defended. (6 *Hill.*, 377 ; 3 *How.*, 173 ; 13 *How.*, 466).

The same offer was made at the end of the plaintiff's proofs, differing only in the fact that it is there offered to

Coykendall agt. Eaton.

make the complaint conform to the proofs. This was also properly decided within the principles laid down in the above authorities, and because it was a fair exercise of the discretion of the court. (24 *Barb.*, 287; 22 *How.*, 481; 51 *Barb.*, 616).

II. The question put to Coykendall. Also the offer made by the plaintiff's counsel. Also the question, "who tended the bar that night ?" Also the question by plaintiff's counsel, were each and all properly excluded by the court as not admissible, and the objections to each were well taken.

III. The propositions marked Nos. 1, 2, 3, 4, made by the plaintiff's counsel, were properly withheld from the jury. There was nothing in either of them requiring a submission to the jury, or that properly belonged to the jury to decide. The questions were properly determined by the court, and no error was committed in refusing to allow them to go to the jury.

IV. The *motion* to set aside the non-suit and to grant a new trial was properly *denied* by the county court. The decision of the county court should be *affirmed* and a new trial *denied*.

*By the court*, FOSTER, J. This action was commenced in a justice's court. The plaintiff complained of the defendant "for one wolf robe and cushion left in the posession and care of the defendant, which he neglects and refuses to deliver and claims damages in the sum of $40.

The answer was a general denial, &c., a trial was had before the justice, who rendered judgment in favor of the plaintiff for $45 of damages and costs, and the defendant appealed to the county court, where the cause was tried and a verdict rendered for the plaintiff, which upon appeal to this court, was set aside and a new trial ordered.

The cause was again tried in the county court, and before opening the case to the jury, the plaintiff's counsel moved to amend the complaint by alleging that the defendant was

an innkeeper, and the plaintiff was his guest at the time of the loss of the property in question. The motion was denied, except on condition that the plaintiff pay the costs of the previous trial in the county court, and the costs of the appeal to the general term of this court. The plaintiff's counsel declined to amend on the terms imposed by the court and excepted to the ruling.

And it is insisted now, that the ruling of the court below in that respect, was erroneous. That such error was material and calls for a new trial.

It is hardly worth while to discuss the correctness of the decision below, for the plain reason that the amendment applied for could not possibly have benefited the plaintiff.

The undisputed facts show, that Charles Coykendall, who left the robe at the defendant's house and who was the son of the plaintiff, was 25 years of age, that he went to the defendants' to attend a ball or dance, having a lady in his charge: That he borrowed the property in question of his father: That he went there on his own business, and that in doing so, he in nowise was acting as the agent or servant of the plaintiff. And no claim is made that he was a member of the plaintiff's family.

Now the duties of an innkeeper as such, are due only to his guests: To constitute one a guest, it is not necessary that he be at the inn in person. It is enough that his property be there in the charge of his wife, or servant, or agent, who is there in his employment, or as a member of his family; But they must be there in such way that the law implies the property while there, to be in his possession and not in the possession of the person who is there with it, as his bailee. It will not do to hold that a livery man who lets to another a horse or team, which the hirer takes to an inn, can claim as between *himself* and the innkeeper to be a guest, so as to charge him as innkeeper for the horse or team. It is the bailee of the livery man that is the guest, and to him only is the innkeeper responsible *as such*. And

the rule is the same whether the owner of the property hires it out or lends the use of it to the person who takes it to the inn. In either case, the owner can claim only the ordinary rights of owner as against a subsequent bailee, and not the special rights which belong to a guest, unless such special rights are expressly transferred to him by his bailee. And the case also shows that when Charles Coykendall finally left the premises of the defendant, he left the property there to be called for thereafter, so that as to him also the relation of innkeeper and guest, if it had ever existed, was at an end.

The plaintiff then, if he can maintain this action, must do so upon the principles which govern ordinary transactions of bailment and without reference to the special obligations imposed upon an innkeeper.

Soon after arriving at the defendant's house, Charles Coykendall handed his robe to one Case who had charge of the robe room, and had his name pinned on to it. He bought his ticket for the ball for his lady and self, and at about half past 2 o'clock in the morning, left with his partner for home, having paid 25 cents for keeping the robe and taking it with him.

After leaving defendant's house and within a few rods of it, he sheered to the left and drove off the bank. His buggy was tipped over and broken, and his horse escaped from him and with the buggy, except the top part of it including the robe and cushions. He took the robe, and with his lady went back to the house, handed his robe to Case, who said he would pin his name on it again. He then procured a light and went to the place of the accident, found the cushion of the buggy, brought it to the house and delivered it to Case. He staid there with the lady about three hours, having during that time a private room, and they left again paying no bill for the time they were then there; just before starting, he asked the bar-keeper (not Case), if it would be perfectly safe for him to leave the cushion and robe there,

until he could send for them in a day or two, Case who was at the robe room having given him permission to leave them there, and he did leave them and went home.

The plaintiff's counsel then asked the witness : " What did the bar-keeper answer when you asked him if the robe and cushion would be safe if left there until you could send for them ? "    This was objected to, on the ground that "it is not admissible under the pleadings; also, that the bartender is not proved to be in the employ of the defendant."

The objection was sustained by the court and the plaintiff s counsel excepted.

The only evidence then or at any time given in the case to connect the alleged barkeeper with the defendant, was the testimony of Charles Coykendall, that he "had seen this bar-keeper waiting on people to drinks that evening."   I think the objection to the evidence offered was correct. Enough had not been shown to make the defendant responsible for any undertaking of his, especially one in regard to storage of property, after the relation of innkeeper and guest, if it existed at all was ended.

It appeared on the trial, that within a day or two thereafter Charles Coykendall demanded the robe and cushion of the defendant : That the defendant did not deliver them to him and no account was given on the trial as to what became of them.

Case was not called by either party as a witness, and aside from the fact that he had charge of the robe room that night, his relations to the defendant were not clearly defined, and the testimony of the defendant himself on that point was to some extent contradictory of itself.

As for instance, he testified consecutively as follows: "No one else in the house was charged with taking charge of robes, &c., except Case ; Case was instructed not to check anything unless it belonged to the dancing party.

Q. "How was Case to know who belonged to the party?"

A. Instructed him to know I did not give Case any special instructions that evening on that subject.

And Charles Coykendall testified : that on the trial of the cause before the justice, the defendant swore that Case was in his employ that evening, and that the defendant told him when he demanded the robe, that Case took charge of the robe room that evening.

The only question I have in regard to the case is,whether the above and the like evidence which was given, should not have been submitted to the jury, according to the request of the plaintiff's counsel, for them to decide whether or not Case had authority to receive the robe and cushion for the defendant, of Charles Coykendall when he returned with them after the accident, and whether the defendant or his agent did not afterwards deliver them to a wrong party. For if he had authority to receive them and they in that way came to the possession of the defendant, and were afterwards delivered by him to a wrong person or otherwise lost by his gross negligence, he is liable whether as innkeeper or not and whether he was a bailee for hire or gratuitously so.

The rule is, that a bailee for hire or a gratuitous bailee who delivers the goods he has as such bailee, to a wrong party, or, who after they are demanded of him does not in any way account for their loss, is liable to the true owner for their value (*Willard* agt. *Bridge,* 4 *Barb.,* 361 ; *Beardsley* agt. *Richardson,* 11 *Wend.,* 25 ; 2 *Parsons on Contracts* 5th ed., 96, note (*W.*) ; *Esmay* agt. *Fanning,* 5 *How.,* 228, 232).

And if the defendant is liable for gross negligence as such baileee, the action for not delivering on the proper demand being made, can be maintained either by the bailee from whom the defendant received it, or by the real owner.

The court erred in not submitting the case to the jury and in non-suiting the plaintiff.

A new trial should be granted with costs to abide the event.