JOHN J. McKILLOP, Appellant, v. DAVID REICH, Respondent.

*Livery stable keeper — his liability as bailee for goods left in his stable.*

One Bergman hired from one Reich, who kept a livery stable, a number of coaches to be used at a wedding entertainment, and at the same time arranged with Reich to take care of such other carriages as should be sent from a distance. Pursuant to this arrangement one McKillop left two carriages in Reich's stable to remain during the wedding entertainment, and, under the direction of the person whom he found in charge of the stable, placed in the office of the stable certain personal property contained in the carriages. After depositing the property in the office McKillop informed Reich, who was then outside of the stable on the sidewalk, that he had left the property in the office and Reich responded "all right." When McKillop returned to the stable he was unable to obtain the property deposited in the office and later made a personal demand upon Reich therefor. Reich did not return the property and declined to give any explanation or reason for failing to do so.

*Held,* that Reich was liable to McKillop for the value of such personal property.

APPEAL by the plaintiff, John J. McKillop, from a judgment of the Municipal Court of the city of New York, borough of Brooklyn, in favor of the defendant.

*Martin Byrne,* for the appellant.

*Joseph Wilkenfeld,* for the respondent.

WOODWARD, J.:

The defendant is the keeper of a livery stable. In December, 1901, one Benjamin Bergman went to the defendant and hired seventeen coaches to be used at a wedding entertainment, at the same time entering into an arrangement with the defendant to take care of such other teams as should be sent from a distance. The defendant supplied the said Bergman with his business cards marked "O. K.,"

which were intended for the use of the persons driving the carriages which were to be cared for by the defendant. Two of these cards were delivered to the plaintiff, and two carriages in his charge were driven to the defendant's stable to remain during the entertainment. Certain personal property contained in the carriages was taken from them, and, under the direction of the person who was found in charge of the stable, these articles were placed in the office. The defendant was outside of the stable on the sidewalk at the time, and plaintiff told him he had left the articles in the office, to which the defendant responded, "All right." Subsequently, when the plaintiff went to the barn for his teams, he was unable to get his personal property deposited in the office, and some time later he made a personal demand on the defendant for his property, which was not returned, and the defendant declined to make any explanation of its whereabouts or to give any reason for not returning the same.

Under these circumstances the rule is well established that even a gratuitous bailee is liable for the value of the goods. In *Coykendall* v. *Eaton* (55 Barb. 188, 193) the rule is stated to be that a bailee for hire, or a gratuitous bailee, who delivers the goods he has as such bailee to a wrong party, or who, after they are demanded of him, does not in any way account for their loss, is liable to the true owner for their value. (*Willard* v. *Bridge*, 4 Barb. 361; *Beardslee* v. *Richardson*, 11 Wend. 25; 2 Pars. on Cont. [5th ed.] 96; *Esmay* v. *Fanning*, 5 How. Pr. 228, 232; *Hayes* v. *Kedzie*, 11 Hun, 577, 580; *George* v. *Depierris*, 17 Misc. Rep. 400, 402; *Bank of Oswego* v. *Doyle*, 91 N. Y. 32, 41.)

*First National Bank* v. *Ocean National Bank* (60 N. Y. 278) does not hold a different doctrine. The opinion proceeds upon the ground that the receiving of special deposits was not shown to be part of the ordinary business of the bank; that there was an entire absence of evidence that it was the habit or practice of the defendant to receive such deposits; that no authority to the cashier or assistant cashier to receive special deposits had been shown, and that, whatever might be the incidental powers of the corporation, the power of its officers to bind it could be presumed only to exist within the scope of its ordinary business and their ordinary duties. (*Pattison* v. *Syracuse Nat. Bank*, 80 N. Y. 82, 93.) In other

words, in the case relied upon by the learned court below the question decided was not that a gratuitous bailee might not be liable under the circumstances shown to exist in the case now before us, but that in an action against a banking corporation it was necessary to show that the cashier or other officer accepting the position of bailor was acting within the scope of his actual or implied powers as an agent of the corporation, and was thus in a position to make the latter liable. If the action had been against the cashier personally, and it had been shown that he received the special deposit, and that on demand he had refused to deliver the same or to make any explanation, it is not to be doubted that the court would have reached a very different conclusion.

The judgment appealed from should be reversed and a new trial ordered, with costs.

All concurred.

Judgment of the Municipal Court reversed and new trial ordered, costs to abide the event.