Anthony J. Di Gtovanna, J.
Plaintiff brought his automobile to defendant’s garage in order to store it for a protracted period. It is his claim that at the time of storage he told the defendant’s agents, servants and employees that he had packed into the trunk and on the back seat all of his personal belongings removed from his room and that he intended to leave those in the automobile until he returned upon completion of a job he had obtained as a seaman. It is his contention that the defendant’s agents, servants and employees told him that it Avould be per *637 fectly all right for him to leave the articles and that they assured him that everything would he safe and that the defendant, its agents, servants and employees would take care of the articles. He left with the defendant the ignition key and the trunk key. He claims that when he returned 13 months later to remove his automobile he discovered that his personal belongings had disappeared. This action was brought to recover the value of those items.
The defendant substantially denied the claims of the plaintiff, except that it admitted the storage of the automobile for 13 months.
The jury returned a verdict in favor of the plaintiff. In setting aside this verdict and dismissing the complaint, the court said: “ The complaint is dismissed. I don’t know what you fellows were doing in there, but I think it is outrageous. That is just picking somebody else’s pocket in the manner in which this was done. I am ashamed of you.”
A study of the record convinces me that the jury verdict was proper and should have been permitted to stand. A confused understanding of the applicable law is partially responsible for the decision of the trial court. In reviewing this record and the decision, the plaintiff is entitled to be afforded the presumption that the evidence favorable to him is true. If the facts favor-“ able to the plaintiff makes out a prima facie case, then it must be held that the entire evidence presented a question of fact for the jury. If so, then the verdict cannot be disturbed. The decision setting aside the verdict was not upon the ground that the verdict was contrary to the weight of credible evidence but upon the apparent ground that no actionable evidence was proven.
The legal position taken by the respondent is stated at page 3 of its brief in the following words: “ Since the defendant was not a warehouseman within the meaning of the General Business Law, the burden of proof of defendant’s negligence never shifted from the plaintiff to the defendant.” This argument presented an erroneous rule of law to the proven facts in this case.
It is well to note briefly, that in respect to the duties of a warehouseman the law states that where a party proves that he has left goods with a warehouseman which is not returned upon proper demand, a prima facie case is made out and the burden of going forward shifts to the warehouseman to prove the reasons for the failure of return of the goods. If the warehouseman presents a lawful excuse, then the burden of going forward returns to the plaintiff to prove his case by a fair *638 preponderance of the credible evidence that the -warehouseman was negligent in having failed to return his goods. The rule respecting a bailee for hire is quite different. Under this rule the burden of going forward never shifts from the plaintiff to the defendant, but the plaintiff is charged always with the burden of proving that the goods were lost by reason of the negligence of the defendant. The presumption already set forth does not enure to the benefit of a mere bailor for hire in the usual action against a bailee for hire.
Consequently, it is necessary to determine whether, under the circumstances of this case the defendant was a mere bailee for hire or a warehouseman. Subdivision 1 of section 142 of the General Business Law, also known as the Uniform "Warehouse Receipts Act, defines a “warehouseman” as follows: “means a person lawfully engaged in the business of storing goods for profit. ’ ’
In Corpus'Juris Secundum (Vol. 61, Motor Vehicles, § 724, p. 867) the following headnote appears: “ Ordinarily a garage keeper is a bailee for hire as to a motor vehicle which is left with, and received by, him for storage * * *. He is a warehouseman as to a vehicle in dead storage, that is, a vehicle stored for a considerable period of time, such as a season, and not kept in condition for frequent use.”
Assuming as true the plaintiff’s contention that the defendants accepted for storage not only the automobile, but the personal belongings in it, the following law relating to such situation is stated in said volume (p. 867) as follows: “ but he is a warehouseman as to motor vehicles which he houses on dead storage, that is, motor vehicles which he stores for the winter and which are not kept in condition for constant use. ’ ’ (Matter of Wegner, 50 S. D. 583.)
In subdivision b of section 726 on page 871 [C. J. S., Vol. 61] it is said: ‘ ‘ Whether a garage keeper has any duty to care for articles in vehicles received by him for storage depends on notice to him of the presence of such articles; he is liable, where he had notice, for loss of such articles by negligent delivery to a third person not authorized to receive the vehicle and articles, but not where he had no notice. It has been said that, if there is notice, the garage keeper’s duty rises no higher than that of a gratuitous bailee; but, even where the bailment is regarded as gratuitous, there may nevertheless be liability for failure to take adequate measures to guard against the misdelivery which caused the loss; (Rubin v. Forwarders Auto Trucking Corp., 111 Misc. 376) and, where a bailment of baggage in the vehicle is regarded as one for hire, slight care is not sufficient. ’ ’
*639 In regard to the rules of evidence relating to such an action, and the burden of proof in such cases, it is said in subdivision b of section 727 on page 873:
‘ ‘ according to the weight of authority a presumption of negligence arises and a prima facie case of negligence is established where plaintiff proves delivery of his motor vehicle in good condition to the garage keeper and that the latter failed to produce it in a similar condition, or that the garage keeper failed or refused to return it on demand, or that the vehicle was stolen while in his care. (Hobbie v. Ryan, 130 Misc. 221.)
“ In such cases defendant has the burden of going forward with evidence of due care and lack of negligence on his part, to counteract the presumption and rebut the prima facie case'; and where defendant does not introduce evidence of sufficient weight to counteract and overcome the presumption, plaintiff is entitled to recover. Mere proof of theft of the unreturned vehicle is not sufficient to meet the presumption and overcome plaintiff’s prima facie case ”. (Federal Ins. Co. v. Lindsley, 132 Misc. 54.)
It is further stated therein in subdivision e on page 874:
“ Questions of fact, such as whether the garage keeper was negligent or exercised ordinary and reasonable care, are to be determined by the jury or other trier of facts; and where the action is tried before a jury instructions correctly stating the law applicable to the pleadings and the evidence may and should be given.
“ The parties are entitled to a trial where a question of fact is presented in an action. (Rubinstein v. Pouch, 24 N. Y. S. 2d 172) * '* *. Whether the garage keeper was negligent or exercised ordinary and reasonable care in safeguarding the vehicle is ordinarily a question of fact for the jury or other trier of facts (Hobbie v. Ryan, supra) and should not be determined as a question of law ’ ’.
A similar question was raised in New Jersey Mfrs. Assn. Fire Ins. Co. v. Galowitz (106 N. J. L. 493) wherein an appeal was taken from a nonsuit. The court said (p. 494): “The legal concept of the action comes within the general subject of bailee for hire. The automobiles were stored at a price in defendant’s garage. The principle of liability is that of a warehouseman. The duty of the warehouseman as bailee under the common law was to take reasonable care of the goods trusted to his charge. Section 21 of chapter 133 of the laws of 1907 entitled ‘ An act concerning warehouse receipts and to make uniform the law relating thereto ’ (4 Comp. Stat., p. 5780), provides that ‘ a warehouseman shall be liable for any loss or injury to the goods *640 caused by his failure to exercise such care in regard to them as a reasonable careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by exercise of such care.’ That statute makes no change in this respect in the common law doctrine and is merely declaratory thereof. ’ ’ Accordingly, the dismissal was vacated and the case sent back for a new trial.
Section 95 of the General Business Law, entitled “ Obligation of warehouseman to deliver” provides in part: “In case the warehouseman refuses or fails to deliver the goods in compliance with a demand by the holder or depositor so accompanied, the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal.”
It is further provided in section 91 that the warehouse receipt must not contain any provision which may ‘ ‘ In any wise impair his obligation to exercise that degree of care in the safekeeping of the goods intrusted to him which a reasonably careful man would exercise in regard to similar goods of his own.”
Section 107 provides: “A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care. ’ ’
That the foregoing sections constitute an enactment of the common law into the statutory law has been recognized in Mortimer v. Otto (206 N. Y. 89) and Buffalo Grain Co. v. Sowerby (195 N. Y. 355). That the declaration in those cases concerning the enactment of common law into statutory form is not accidental, may well be recognized by a reading of section 140 which seeks to make clear that in any case not provided for in this article, the rules of law and equity, including the law merchant, continue to be applicable. "Whether the interpretations of the sections in other States should be applied in this State, has likewise been settled by legislative fiat when in section 141 it was provided: ‘ ‘ This article shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.”
The rules enunciated above appear to have been part of the law of this State even as far back as Schmidt & Webb v. Blood & Green (9 Wend. 268, 271).
In Rubin v. Forwarders Auto Trucking Corp. (111 Misc. 376) in a counterclaim in an action for storage charges, it was shown *641 by the bailor that when his truck was brought into the garage by the defendant’s chauffeur, there were around five flasks of quicksilver, of the value of $500. The chauffeur, for the greater-safety of this readily removable property, placed it, with plaintiffs’ consent, in the private office, notifying the custodian of the garage that he would take the truck out the next morning: at an unusually early hour. The next morning an unidentified man called at the garage for the truck, and also for the quicksilver, which he knew, somehow, was in the office, and the: custodian at that time, who was not the custodian in charge the-night before, helped the man put the quicksilver on the truck,, and assisted him in driving the truck out of the garage. No-representation was made in any form by the thief, that he was-connected with the defendant; nor was any evidence of authority to take away the truck asked for by the man in charge of the-garage. The truck was abandoned some distance from the-garage but the quicksilver was missing. In reversing a dismissal of the complaint, the court said (pp. 377-378): “It seems to-us that that was an erroneous view, and that the facts, as to-which there was no dispute, show that the plaintiffs did not, exercise sufficient care to protect the property of their customer.. We do not think it would serve any purpose to decide whether the plaintiffs were, as to the quicksilver, gratuitous bailees, or whether the bailment was coupled with an interest. Regarding-the service of storing the quicksilver as a mere gratuity we: are of the opinion that in view of the nature of the plaintiff’s, business, they did not take adequate measures to guard against, the very sort of thing that occurred here and occasioned the-loss of which defendant complains. McKillop v. Reich, 76 App. Div. 334; Wilson v. Wyckoff, Church & Partridge, 113: id. 92; affd., without opinion, 200 N. Y. 561. As the facts are-admitted, and the plaintiffs have conceded that the value of the stolen quicksilver was $500, there is no need of a new trial.”
The result obtained in New Amsterdam, Cas. Co. v. Greenberg (153 Misc. 347) is readily distinguishable from the above.. Therein an employee of the garage stole an automobile. It suffices to say that he was eventually punished therefor. Proof of the fact that it was an employee who had stolen the car and was. then apprehended was held sufficient to recast the burden upon, the plaintiff to re-establish the negligence of the defendant. Not, having come forward with such proof, a directed verdict for the defendant was held to be proper, the court saying (p. 349): ‘ ‘ Where a bailor shows loss or damage of bailed property and the bailee gives no explanation of the loss or damage, the bailee is presumed liable therefor. But in this case the defendant *642 bailee did show the cause of the damage and that the damage was caused by a theft of the bailed property which was in no way attributable to fault or negligence on the part of the defendant bailee. The case of Hasbrouck v. N. Y. C. & H. R. R. R. Co. (202 N. Y. 363), cited by the plaintiffs, is not in point. The statement in that case to the effect that if the trainman stole the rings it would have been no defense because the defendant was bound to employ faithful servants, is explainable by the fact that the defendant in that case was a common carrier and as such was liable for the willful and malicious acts of its servants toward or upon a passenger. (Dwinelle v. N. Y. C. & H. R. R. R. Co., 120 N. Y. 117.) ”
Consequently, it can be seen that considering the facts favorable to the plaintiff a prima facie case was made out at the close of the plaintiff’s case. The question then arises as to whether the defendant offered an explanation that would justify a ruling as a matter of law that the defendant was not negligent. Without detailing the testimony of the several defendant’s witnesses, it suffices to say that denials were made of the conversations relating to the storage of the personal belongings, the actual storing of the goods to the knowledge of the defendant and of any knowledge of the circumstances and the disappearance of the goods, assuming that they were stored in the first instance. It was admitted by the defendant’s witnesses that the keys to the car had been left in the car or on the garage premises during the entire time that it was in the garage; that it was customary to leave the keys inside of the ignition; that they do it so that the car can be moved around; that this was done in this case even though the car was placed upon blocks and could not be moved around; that the garage was open 24 hours a day; that complaint was made for the first time about three weeks before the car was removed that the merchandise had disappeared. A question of fact was made out requiring the submission of the case to the jury. Evidently, the jury believed the plaintiff’s version of the facts. In submitting the case to the jury, the court apparently did not comprehend the rules of law respecting burden of proof. It refused to charge as follows: “I respectfully request the Court to charge that failure on the defendant’s part to deliver the property back as called for requires some explanation therefor on the part of the defendant to excuse itself from negligence. ’ ’
It did charge: “ The plaintiff has the burden of proof. Now that isn’t said lightly or just as a matter of legal verbiage. It means that the story told by the plaintiff must be a little bit more believable than the story told by the defendant as to *643 negligence. It is np to the plaintiff to show that the defendant was negligent, and that doesn’t go to the number of witnesses, it goes to the facts in the case.”
It is clear from the quoted portions above that the charge was more favorable to the defendant than to that which he was entitled under the stated existing law. Clearly, even under the charge, if the jury believed the plaintiff’s story, plaintiff was entitled to a verdict. What the court apparently meant in its remarks setting aside the verdict is not clear, except that it may be construed to mean that the plaintiff’s story was morally incredible. (Bottalico v. City of New York, 281 App. Div. 339, 341; Mormilo v. Allied Stevedores Corp., 7 A D 2d 966.)
I do not believe the plaintiff’s story was morally incredible. He was an unattached, unmarried man, possessed of some personal belongings. It is not incredible that before going to sea plaintiff sought a storage place for the storage of his personal belongings, as well as his automobile. According to his testimony, he did not have sufficient to store in a regular storage warehouse. If the jury believed his story concerning the contract with the defendant, then he was entitled to a verdict. It must be remembered that when the plaintiff testified concerning the making of the oral agreement, no objection to that testimony was made by defendant. Consequently, assuming that the exhibits constituted a written contract, it is only part of the entire contract between the parties which consisted not only of the writings but also of the provisions of the oral agreement if the jury believed that such agreement was made. The plaintiff testified that he left with the defendant not only the ignition key, but the trunk key also. The jury believed it. Therefore, that must be accepted as a fact. The defendant’s witnesses testified that the keys were left in the car. Accepting that as a fact, there is certainly a basis for the requirement that the defendant explain the loss of the merchandise under the settled rules of law as set forth above. Evidently the defendant’s explanation was inadequate to convince the jury otherwise. It offered no real explanation. Possessed with the advantage of a charge more favorable to it than the rules of law granted to it, defendant lost when the jury did bring in a verdict for the plaintiff. It was peculiarly within the province of the jury to do so. No exceptions were taken to the charge by the defendant. The law, as stated by the court, became the law of the case as far as the defendant was concerned.
A contention was made by the defendant that the signs in the garage which read: “ Not responsible for loss or damage by fire, theft or breakage. We will not be liable for loss of any *644 articles left in car and not checked at office. Cars are driven by onr employees solely at customer’s risk ” exonerates it from liability.
These self-exonerating statements are, of course, without efficacy in relieving defendant from its liability, if any. Section 89-b of the General Business Law provides: “ No person who conducts or maintains for hire or other consideration a garage * * * which has the capacity for the housing, storage, parking * * * of * * * motor vehicles * * * may exempt himself from liability for damages for injury to person or property resulting from the negligence of such person, his agents or employees, in the operation of any such vehicle, or in its housing, storage, parking, repair or servicing, or in the conduct or maintenance of such garage * * * and any agreement so exempting such person shall be void.” (Emphasis supplied.)
Attention has been called to Hunter Trucking Co. v. Glatzer (285 App. Div. 314) wherein the court differentiated between the responsibility of a gratuitous bailee garage and a compensated bailee garage. In the first instance the garage would be liable only for gross negligence, while in the latter instance for ordinary negligence. The charge in the instant case did not include anything concerning gross negligence. The case was tried upon the theory of ordinary negligence and the charge was given to the jury by the trial court on that basis. No exception was taken to the charge nor request made. The law of the case, conceded by both sides, involved only the theory of ordinary negligence. No mention was made of this case in any appeal brief. Having conceded that the law of the case involved only the law of ordinary negligence, it is my opinion that the Hunter case does not affect the result reached herein. The case was tried by experienced lawyers who knew their business and they were willing to submit this case upon the theory of ordinary negligence. As was said in Dalton v. Hamilton Hotel Operating Co. (242 N. Y. 481, 487): “ The distinction between ‘ slight ’ and ‘ reasonable ’ care and between ordinary ’ negligence and ‘ gross ’ negligence is oftentimes shadowy and unsatisfactory.” A reversal in this case would not be justified in view of the fact that the lawyers and the court permitted this case to be tried upon the theory of ordinary negligence.
A comment has been made that it would be unfair to hold the bailee liable for the loss of items of which it had no knowledge and of which it had not been furnished a list prior to the bailment. In Goldstein v. Pullman Co. (220 N. Y. 549) plaintiff boarded a Pullman train escorted by a porter who carried his *645 bag and placed it outside of Ms berth. Subsequently the plaintiff went to the washroom with Ms bag, removed some of Ms clothes and put into the bag Ms diamond scarf pin, eyeglasses, collar and tie. He returned the bag to the very same position in which the porter had left it in the aisle. In sustaining the cause of action, the Court of Appeals affirmed judgment on a stipulation absolute in favor of the plaintiff, holding that the defendant was charged with the duty of keeping an eye on the baggage during its presence on the train and that its failure under the circumstances to have done so constituted proof of negligence. The bag had disappeared during the night. The court said (p. 555): “In either capacity its duty at night when the passengers are at rest is one of vigilance so that the passenger may not lose his property through its inattention.”
While not similar to the circumstances of a warehouseman, the rules respecting the duties of bailees are similar enough to warrant the conclusion reached by the jury that the defendant in our case had undertaken to watch the articles left in the automobile by the plaintiff and had not given a satisfactory explanation for their disappearance.
In the Dalton case, the plaintiff had rented an apartment under a lease to take possession two months hence. Before the time for taking possession, she delivered into the hands of the superintendent of the defendant’s apartment hotel baggage with the oral agreement that it would be cared for by the defendant. In discussing the question as to whether this constituted a gratuitous bailment or a bailment for compensation, the court said that while the arrangement for storage of the bags had a certain relation to the lease and undoubtedly never would have been made except for the fact that she had made such a lease, nevertheless in that case the arrangement provided for a separate and distinct bailment different from that covered by the lease. It was said that the lease covered occupation of the. apartment from a certain future date and that the arrangement for storage of the bags covered the intervening period and the necessities for it and the rights secured were entirely different than those provided for by the lease. Comparing the facts therein with those in the instant case, the difference is readily seen and the analogy clearly drawn. In our case the initial arrangement, so the jury believed, was an agreement to care for the automobile and its contents and, consequently, under the reasoning set forth in the Dalton ease, the bailment of the automobile and all its contents was an entire bailment for compensation. Clearly, then, the Hunter case would have had no controlling law applicable to this case because tMs case was *646 tried solely upon the question as to whether a bailment had been made of the automobile and its contents or not, for compensation. So the lawyers understood the situation and so the court understood it. The belated attempt to inject the question of gross negligence cannot avail the defendant when raised for the first time in an appellate court.
The judgment should be reversed on the law and facts and the verdict reinstated in favor of the plaintiff and judgment granted to the plaintiff upon such verdict with appropriate costs in the court below, together with $30 costs on appeal to the plaintiff.